

**Chubb Group of Insurance Companies**

15 Mountain View Road, Warren  New Jersey 07059

**DECLARATIONS
FOREFRONT BY CHUBB
FOR INVESTMENT ADVISERS**

---

ITEM 1.    **Parent Organization** (Name and Address):

RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT COMPANY
1095 RYDAL RD;RYDAL EXEC PLZA
RYDAL, PA 19046

Policy Number: 7043-0085

**FEDERAL INSURANCE**

Incorporated under the laws of Indiana, a stock insurance company, herein called the Company

Capital Center, 251 North Illinois, Suite 1100
Indianapolis, IN 46204-1927

---

**THIS IS A CLAIMS MADE POLICY. EXCEPT AS OTHERWISE PROVIDED HEREIN, THIS POLICY COVERS ONLY CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD. PLEASE READ CAREFULLY.**

ITEM 2.    Limits of Liability:

i.   Each **Loss** Limit of Liability                                  $  1,000,000.00
ii   Aggregate Limit of Liability Each **Policy Period**    $  1,000,000.00

**NOTE: THE LIMITS OF LIABILITY AND ANY DEDUCTIBLE AMOUNT ARE REDUCED OR EXHAUSTED BY DEFENSE COSTS.**

| Insuring Clauses: | ITEM 3.  Deductible Amount: | ITEM 4.  Pending or Prior Date: |
|---|---|---|
| A  Employment Liability | $      25,000.00 | 8/28/1996 |
| B. Fiduciary Liability | $          0.00 | N/A |
| C. Directors and Officers Liability | $      25,000.00 | 12/28/1992 |
| D  Outside Directorship Liability | $          0.00 | N/A |
| E  Investment Advisers Errors & Omissions Liability | $      25,000.00 | 12/28/1992 |

ITEM 5.    **Policy Period:**  from:   12:01 a.m. on January 28, 2004
to:    12:01 a.m. on January 28, 2005
Local time at the address shown in ITEM 1.

ITEM 6.    Endorsement(s) Effective at Inception:

<ENDTDFIMANUAL.

**IN WITNESS WHEREOF, THE COMPANY** issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

*Henry A Aulis*

Secretary

04/16/04

Date

*Thomas F Motamed*

President

*Robert Hamburger*

Authorized Representative



**CHUBB**

In consideration of payment of the premium and subject to the Declarations, limitations, conditions, provisions and other terms of this Policy, the Company agrees as follows:

*Insuring Clauses*  1.

*Employment Liability*  A.  The Company shall pay on behalf of an **Insured** all **Loss** on account of any **Employment Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act**.

*Fiduciary Liability*  B.  The Company shall pay on behalf of an **Insured** all **Loss** on account of any **Fiduciary Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act**.

*Directors and Officers (D&O) Liability*  C.  The Company shall pay on behalf of an **Insured** all **Loss** on account of any **D&O Claim** first made against an **Insured Person** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act**.

*Outside Directorship Liability (ODL)*  D.  The Company shall pay on behalf of an **Insured** all **Loss** on account of any **D&O Claim** first made against an **Insured Person** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** by reason of such **Insured Person** serving in an **Outside Directorship**.

*Investment Advisers Errors and Omissions Liability*  E.  The Company shall pay on behalf of an **Insured** all **Loss** on account of any **Investment Advisers Errors or Omissions Claim** first made against such **Insured** during the **Policy Period** or, if exercised, during the Extended Reporting Period, for a **Wrongful Act** while performing **Investment Adviser Services**, including failure to perform **Investment Adviser Services**.

*Spousal Liability Extension*  2.  If a **Claim** against an **Insured Person** includes a claim against the **Insured Person's** lawful spouse solely by reason of such person's status as a spouse or such spouse's ownership interest in property which the claimant seeks as recovery for a **Wrongful Act** of such **Insured Person**, all loss which the spouse becomes legally obligated to pay on account of such **Claim** shall be treated as **Loss** which the **Insured Person** becomes legally obligated to pay on account of the **Claim** made against such **Insured Person**. All limitations, conditions, provisions and other terms of coverage applicable to the **Insured Person's Loss** shall also be applicable to the spousal loss. However, coverage shall not apply to the extent any claim alleges any **Wrongful Act** by the **Insured Person's** spouse.

| | | |
|---|---|---|
| *Estates and Legal Representatives* | 3. | Subject to the limitations, conditions, provisions and other terms of this Policy, coverage shall extend to **Claims** for **Wrongful Acts** of an **Insured** made against the estates, heirs, legal representatives or assigns of **Insured Persons** who are deceased, incompetent, insolvent or bankrupt. |

| | | |
|---|---|---|
| *Extended Reporting Period* | 4. | If this Policy is terminated or non-renewed for any reason, other than nonpayment of premium, then the **Parent Organization**, on behalf of the **Insureds**, shall have the right, upon payment of additional premium of 75% of the annual Policy premium, to an extension of the coverage granted by this Policy for twelve (12) calendar months following the effective date of termination or non-renewal, but only for a **Wrongful Act** occurring prior to the effective date of termination or non-renewal. This right of extension shall lapse unless written notice of such election, together with payment of the additional premium, is received by the Company within thirty (30) days following the effective date of termination or non-renewal. Any **Claim** made during the Extended Reporting Period shall be deemed to have been made during the immediately preceding **Policy Period**. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute a refusal to renew. |

If the Extended Reporting Period is purchased, the entire additional premium shall be deemed fully earned at the inception of such Extended Reporting Period.

| | | |
|---|---|---|
| *Exclusions Applicable to any Claim* | 5. | The Company shall not be liable for **Loss** on account of any **Claim**: |

a. based upon, arising from, or in consequence of any circumstance if written notice of such circumstance has been given under any policy for which this Policy is a renewal or replacement, and if such prior policy affords coverage (or would afford coverage except for the exhaustion of its limits of liability) for such **Loss**, in whole or in part, as a result of such notice;

b. based upon, arising from, or in consequence of:

   i. the actual, alleged or threatened discharge, release, escape, seepage, migration, dispersal or disposal of **Pollutants** into or on real or personal property, water or the atmosphere; or

   ii. any direction or request that any **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so,

including but not limited to any **Claim** for financial loss to any **Insured Organization**, its security holders or its creditors based upon, arising from, or in consequence of the matters described above. However, this Exclusion shall not apply to any **Employment Claim** for wrongful dismissal, discharge or termination of employment of any claimant in retaliation for such claimant's actual or alleged refusal to violate any federal, state or local statutory law or common law, or such claimant's actual or alleged disclosure regarding any matters described in i. or ii. above;

c. based upon, arising from, or in consequence of any demand, suit or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the Pending or Prior Date set forth in the Declarations, or the same or substantially the same facts, circumstances or situations underlying or alleged therein;

d. for bodily injury, mental or emotional distress (except emotional distress or mental anguish solely as respects any **Employment Claim**), sickness, disease or death of any person or damage to or destruction of any tangible property, including loss of use thereof; or



*Exclusions Applicable to any Claim (continued)*

e.  based upon, arising from, or in consequence of any deliberately fraudulent act or omission, if a judgment or other final adjudication adverse to an **Insured** or any person for whose actions an **Insured** is legally liable, establishes such deliberately fraudulent act or omission.

---

*Exclusions Applicable to any Employment Claim*

6.  The Company shall not be liable for **Loss** on account of any **Employment Claim**:

a.  based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or similar law. However, this Exclusion shall not apply to any **Employment Claim** for retaliatory treatment of a claimant by an **Insured** on account of the claimant's exercise of rights pursuant to any such law;

b.  based upon, arising from or in consequence of:

i.  any actual or alleged violation of any federal, state, local or common law relating to securities, or any rules or regulations promulgated thereunder, all as amended; or

ii.  any actual or alleged purchase, sale or distribution of or offer, representation or agreement relating to securities.

However, this Exclusion shall not apply to any **Employment Claim** for any retaliatory treatment of any claimant for such claimant's actual or alleged refusal to violate any such securities laws, or any actual or threatened disclosure by such claimant of any actual or alleged violation of such securities laws;

c.  for liability of others assumed by any **Insured** under any contract or agreement, either oral or written, except to the extent that an **Insured** would have been liable in the absence of the contract or agreement;

d.  for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, the Fair Labor Standards Act (except the Equal Pay Act), the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act or any amendments to or rules or regulations promulgated pursuant to these laws, or similar provisions of any federal, state, or local statutory law or common law. However, this Exclusion shall not apply to any **Employment Claim** for any retaliatory treatment of any claimant with respect to actual or threatened disclosures by such claimant of any actual or alleged violation of the Fair Labor Standards Act or the Occupational Safety and Health Act by any **Insured**; or

e.  based upon, arising from or in consequence of an actual or alleged breach of a written employment contract, where such **Claim** is brought by or on behalf of a party to such contract.

7.  The Company shall not be liable under an **Employment Claim** for that part of **Loss** other than **Defense Costs**:

a.  which constitutes **Benefits** due or to become due. However, this Exclusion shall not apply where such **Loss** is based on any **Employment Claim** for actual or alleged wrongful dismissal, discharge or termination of employment;

<table>
<tr><td><em>Exclusions Applicable<br>to any Employment<br>Claim</em><br>(continued)</td><td>b.</td><td>which constitutes front pay, future damages or other future economic relief or the equivalent thereof, if the <strong>Insured Organization</strong> is ordered, pursuant to a judgment or other final adjudication, but fails to reinstate the claimant as an employee;</td></tr>
</table>

<em>Exclusions Applicable to any Employment Claim</em> (continued)

b. which constitutes front pay, future damages or other future economic relief or the equivalent thereof, if the **Insured Organization** is ordered, pursuant to a judgment or other final adjudication, but fails to reinstate the claimant as an employee;

c. which constitutes any costs associated with any accommodation required pursuant to the Americans with Disabilities Act, the Civil Rights Act of 1964, rules or regulations promulgated thereunder, amendments thereto, or similar provisions of any federal, state, local statutory law or common law; or

d. which constitutes the cost of compliance with any order for, grant of or agreement to provide injunctive or non-pecuniary relief

*Exclusions Applicable to any Fiduciary Claim*

8. The Company shall not be liable for **Loss** on account of any **Fiduciary Claim**:

a. based upon, arising from, or in consequence of liability of others assumed by any **Insured** under any contract or agreement, either oral or written, except to the extent that an **Insured** would have been liable in the absence of the contract or agreement, or the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Sponsored Plan** or **Insured Plan** was established;

b. based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security or disability benefits or any similar law, except the Consolidated Omnibus Budget Reconciliation Act of 1985 and amendments thereto;

c. based upon, arising from, or in consequence of an **Insured** having gained in fact any profit, remuneration or advantage to which such **Insured** was not legally entitled;

d. based upon, arising from, or in consequence of any wilful violation of any statute or regulation by an **Insured**, if a judgment or other final adjudication adverse to such **Insured** establishes such willful violation; or

e. for libel or slander.

9. The Company shall not be liable under a **Fiduciary Claim** for that part of **Loss** other than **Defense Costs**:

a. which constitutes fines or penalties or the multiple portion of any multiplied damage award, other than the five percent or less, or the twenty percent or less, civil penalties imposed upon an **Insured** as a fiduciary under Sections 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974 as amended;

b. based upon, arising from, or in consequence of the failure to collect an employer's contributions owed to a **Sponsored Plan** or **Insured Plan** unless the failure is because of the negligence of any **Insured**;

c. which constitutes the return or reversion to an employer of any contribution or asset of a **Sponsored Plan** or **Insured Plan**; or

d. which constitutes benefits due or to become due under the terms of a **Sponsored Plan** or **Insured Plan**, except to the extent that an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation, and recovery for the benefits is based upon a covered **Wrongful Act**.


CHUBB

**Exclusions Applicable to any D&O Claim**

10. The Company shall not be liable for **Loss** on account of any **D&O Claim**:

    a.    brought or maintained by or on behalf of any **Insured** except:

        i.    a **D&O Claim** that is a derivative action brought or maintained on behalf of an **Insured Organization** by one or more persons who are not **Insured Persons** and who bring and maintain such **D&O Claim** without the solicitation, assistance or participation of any **Insured**; or

        ii.    a **D&O Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if such **D&O Claim** directly results from another **Claim** covered under this Policy;

    b.    based upon, arising from, or in consequence of an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, as amended, or similar provisions of any federal, state, or local statutory law or common law as respects any pension, profit sharing, health and welfare or other employee benefit plan or trust established or maintained for the purpose of providing benefits to employees of an **Insured Organization**;

    c.    for **Wrongful Acts** occurring in an **Outside Directorship** after the date an **Insured Person** ceases to serve in such position with the consent of the **Insured Organization**;

    d.    based upon, arising from, or in consequence of an **Insured Person** having gained in fact any personal profit, remuneration or advantage to which such **Insured Person** was not legally entitled;

    e.    based upon, arising from, or in consequence of any willful violation of any statute or regulation by an **Insured**, if a judgment or other final adjudication adverse to such **Insured** establishes such willful violation;

    f    for an accounting of profits made from the purchase or sale by an **Insured Person** of securities of the **Insured Organization** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any federal, state or local statutory law or common law; or

    g.    for libel, slander, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, assault or battery.

**Exclusions Applicable to any Investment Advisers Errors or Omissions Claim**

11. The Company shall not be liable for **Loss** on account of any **Investment Advisers Errors or Omissions Claim**:

    a.    based upon, arising from, or in consequence of the insolvency, conservatorship, receivership, bankruptcy or liquidation of any bank or banking firm, insurance company, investment company, investment banker or any broker or dealer in securities or commodities, or other such organizations of a similar nature, or the failure to pay or suspension of payment by such entities;

    b.    based upon, arising from, or in consequence of any pension, profit sharing, health, **Welfare Benefit Plan** or **Employee Benefit Plan** or trust, including but not limited to any violation of the Employee Retirement Income Security Act of 1974, amendments thereto or similar provision of any federal, state or local statutory law or common law, sponsored or established by the **Insured Organization** for the employees of the **Insured Organization**;

*Exclusions Applicable to any Investment Advisers Errors or Omissions Claim (continued)*

c.   by, on behalf of, or at the behest of any **Insured** against any other **Insured**, or by, on behalf of, or at the behest of any business enterprise which is operated, managed or owned, directly or indirectly, in whole or in part by any **Insured**. However, this Exclusion shall not apply:

   i.   where the claimant is an **Insured Person** and was provided with or was entitled to be provided **Investment Adviser Services** and is bringing such **Investment Advisers Errors or Omissions Claim** solely in the capacity as a customer of the **Insured Organization**, where such **Investment Advisers Errors or Omissions Claim** is brought without the solicitation, assistance or participation of any other **Insured**; or

   ii.  to an **Investment Advisers Errors or Omissions Claim** brought or maintained by an **Insured Person** for contribution or indemnity, if the **Investment Advisers Errors or Omissions Claim** directly results from another **Investment Advisers Errors or Omissions Claim** covered under this Policy;

d.   based upon, arising from, or in consequence of the liability of a party, other than any **Insured**, assumed by any **Insured** pursuant to a contract, except liability for **Loss** that the **Insured** would have had in the absence of such contract;

e.   based upon, arising from, or in consequence of:

   i.   the underwriting, securitizing, syndicating, promoting, or market making (as defined in Section 3(A)(38) of the Securities Exchange Act of 1934 as amended) of any debt or equity security or other evidence of indebtedness, or any other similar investment banking activity;

   ii.  the rendering of advice or recommendations regarding any actual, attempted or threatened merger, acquisition, divestiture, tender offer, proxy contest, leveraged buy-out, going private transaction, insolvency proceeding, reorganization, capital restructuring, recapitalization, spin-off, primary or secondary offering of debt or equity securities or other evidence of indebtedness, dissolution or sale of all or substantially all of the assets or stock of a business entity or any effort to raise or furnish capital or financing for any enterprise or entity;

   iii. the rendering of a fairness opinion regarding the valuation of any assets or business entity not held by any **Insured** as trustee;

   iv.  any acquisition or sale of securities by any **Insured** for such **Insured's** own account, or

   any disclosure requirements in connection with any of the foregoing;

f.   for libel or slander;

g.   for personal profit, advantage or remuneration gained in fact by any **Insured**, to which such **Insured** was not legally entitled;

h.   based upon, arising from or in consequence of any intentional breach of contract;

i.   based upon, arising from or in consequence of any actions of any **Insured** acting as a "broker" or "dealer" in securities, as those terms are defined in Sections 3(a)(4) and 3(a)(5) of the Securities Exchange Act of 1934; or



| | |
|---|---|
| *Exclusions Applicable to any Investment Advisers Errors or Omissions Claim* (continued) | j.  based upon, arising from or in consequence of forming, syndicating, operating, administering, advising, or rolling up a limited partnership or real estate investment trust. However, this Exclusion shall not apply to the performance of **Investment Adviser Services** by a limited partnership, other than a real estate limited partnership, where the **Insured** does not act as a general partner to the limited partnership and such limited partnership is not otherwise owned, managed, operated by any **Insureds**. |
| *Severability of Exclusions* | 12.  With respect to the Exclusions herein, in order to determine if coverage is available:<br><br>a.  no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person**; and<br><br>b.  all facts pertaining to and knowledge possessed by any past, present or future chief financial officer, in-house general counsel, chief executive officer, President or Chairman of any **Insured Organization** shall be imputed to any **Insured Organization**. |
| *Limit of Liability and Deductible* | 13.  All **Loss** arising out of the same **Wrongful Act** and all **Interrelated Wrongful Acts** of any **Insured** shall be deemed one **Loss**, and such **Loss** shall be deemed to have originated in the earliest **Policy Period** in which a **Claim** is first made alleging any such **Wrongful Act** or **Interrelated Wrongful Acts**.<br><br>The Company's maximum liability for each **Loss**, whether covered under one or more Insuring Clauses, shall be the Limit of Liability for each **Loss** set forth in the Declarations. The Company's maximum aggregate liability for all **Loss** on account of all **Claims** first made during the same **Policy Period**, whether covered under one or more Insuring Clauses, shall be the Aggregate Limit of Liability for each **Policy Period** set forth in the Declarations.<br><br>The Company's liability under this Policy shall apply only to that part of each **Loss** which is excess of the applicable Deductible Amount set forth in the Declarations and such Deductible Amount shall be borne by the **Insured** uninsured at the **Insured's** own risk.<br><br>If a single **Loss** is covered by more than one Insuring Clause, and if more than one Deductible Amount applies to such **Loss**, the largest applicable Deductible Amount shall be the Deductible Amount applicable to such **Loss**.<br><br>If the Company or any of its subsidiaries or affiliated companies makes payment under another policy on account of any **D&O Claim** that is also covered under Insuring Clause D., Outside Directorship Liability, the Limit of Liability for this Policy shall be reduced by the amount of such payment.<br><br>The Limit of Liability available during the Extended Reporting Period, if exercised, shall be the remaining portion, if any, of the Limit of Liability provided by the immediately preceding **Policy Period**. |

| | | |
|---|---|---|
| *Presumptive*<br>*Indemnification* | 14. | If the **Organization:** |

    a. fails or refuses, other than for reason of **Financial Impairment**, to indemnify the **Insured Person** for **Loss**; and

    b. is permitted or required to indemnify the **Insured Person** for such **Loss** pursuant to the fullest extent permitted by law,

then, notwithstanding any other conditions, provisions or terms of this Policy to the contrary, any payment by the Company of such **Loss** shall be subject to:

    i. the applicable Insuring Clause Deductible Amount set forth in the Declarations for this Policy; and

    ii. all of the Exclusions of this Policy.

| | | |
|---|---|---|
| *Defense and*<br>*Settlement* | 15. | The Company shall have the right and duty to defend any **Claim** covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The Company's duty to defend shall cease upon exhaustion of the Company's applicable Limit of Liability set forth in the Declarations. |

The Company may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient. If such **Insured** withholds consent to such settlement, the Company's liability for all **Loss** on account of such **Claim** shall not exceed the amount for which the Company could have settled such **Claim** plus costs, charges and expenses accrued as of the date such settlement was proposed in writing by the Company to such **Insured**.

No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the Company's written consent, which shall not be unreasonably withheld. The Company shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

All **Insureds** agree to provide the Company with all information, assistance and cooperation which the Company reasonably requests, and agree they will do nothing that may prejudice the Company's position or its potential or actual rights of recovery.

**Defense Costs** are part of and not in addition to the applicable Limit of Liability set forth in the Declarations, and the payment by the Company of **Defense Costs** reduces such applicable Limit of Liability.

| | | |
|---|---|---|
| *Allocation* | 16. | If any **Insured** in an **Employment Claim**, **Fiduciary Claim**, **Investment Advisers Errors or Omissions Claim** or if **Insured Persons** in a **D&O Claim** incur both **Loss** that is covered by this Policy and also loss which is not covered by this Policy, either because such **Claim** includes both covered and uncovered matters, or because such **Claim** is made against both covered and uncovered parties, then coverage will apply as follows: |

    a. 100% of all **Defense Costs** incurred only by such **Insured** on account of such **Claim** will be considered covered **Loss**; and

    b. all remaining loss other than **Defense Costs**, incurred by such **Insured** on account of such **Claim**, will be allocated between covered **Loss** and uncovered loss and covered and uncovered parties, based upon the relative legal exposures of the parties to such matters.



**CHUBB**

---

*Arbitration*  17. Any dispute between any **Insured** and the Company based upon, arising from or in connection with coverage under this Policy, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration.

The rules of the American Arbitration Association shall apply except with respect to the selection of the arbitration panel. The panel shall consist of one arbitrator selected by such **Insured**, one arbitrator selected by the Company and a third independent arbitrator selected by the first two arbitrators.

---

*Other Insurance*  18. If **Loss** arising from any **Claim** made against any **Insured** is insured under any other valid policies prior or current, then such **Loss** shall be covered hereunder, subject to all limitations, conditions, provisions and other terms hereunder, only to the extent that the amount of such **Loss** is in excess of the amount of payment from such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limits of Liability in this Policy.

---

*Outside Directorship*  19. Any coverage provided for a **D&O Claim**, shall not be construed to extend to any **Outside Entity** or to any of the officers, directors, or employees of such **Outside Entity** other than the **Insured Person** serving in the capacity of an **Outside Directorship**. Such coverage shall be specifically excess of any insurance or indemnity from such **Outside Entity** or any other organization, available to such **Insured Person** by reason of serving in such **Outside Directorship**.

---

## Changes in Exposure

*Acquisition or Creation of Another Organization*  20. If an **Insured Organization** after the inception date of this Policy:

a. acquires securities or voting rights in another organization, or creates another organization, which as a result of such acquisition or creation becomes a **Subsidiary**; or

b. acquires any organization by merger into or consolidation with an **Insured Organization**,

then such organization, its **Insured Persons, Sponsored Plans** and **Insured Plans** shall be **Insureds** under this Policy, but only with respect to **Wrongful Acts** or **Interrelated Wrongful Acts** where all or part of such acts occurred after such acquisition or creation, unless the Company agrees, after presentation of a complete application and all appropriate information, to provide coverage by endorsement for **Wrongful Acts** occurring prior to such acquisition or creation.

If the fair value of the assets of the acquired organization exceeds 25% of the combined total assets of all **Insured Organizations** as reflected in their most recent audited consolidated financial statements or the assets under management of the acquired organization exceeds 25% of the assets under management of the **Insured Organization**, then the **Parent Organization** shall give written notice of such acquisition to the Company as soon as practicable together with such information as the Company may require, and any reasonable additional premium shall be paid.

---

| | | |
|---|---|---|
| *Acquisition of Insured Organization by Another Organization* | 21 | If: |

a. the **Parent Organization** merges into or consolidates with another organization; or

b. another organization, person or group of organizations or persons acting in concert acquires securities or voting rights which result in ownership or voting control by the other organization or person of more than 50% of the outstanding securities representing the present right to vote for the election of directors of the **Parent Organization**; or

c. the **Insured Organization** completely ceases to actively engage in its primary business ("cessation"); or

d. **Financial Impairment** occurs,

then coverage under this Policy shall continue until termination of this Policy, but only with respect to **Claims** where all or part of the **Wrongful Acts** or **Interrelated Wrongful Acts** occurred prior to such merger, consolidation or acquisition, cessation or **Financial Impairment**. The **Parent Organization** shall give written notice of such merger, consolidation or acquisition, cessation or **Financial Impairment** to the Company as soon as practicable, together with such information as the Company may require.

| | | |
|---|---|---|
| *Employee Stock Ownership Plan* | 22 | No coverage for a **Fiduciary Claim** shall be afforded pursuant to Section 20 or Section 25 of this Policy, with respect to any Employee Stock Ownership Plan unless the Company, by specific endorsement hereto, agrees to afford such coverage. |

| | | |
|---|---|---|
| *Cessation of Subsidiaries* | 23 | In the event an organization ceases to be a **Subsidiary** during the **Policy Period**, then coverage under this Policy with respect to such **Subsidiary** and its **Insured Persons**, **Sponsored Plans** and **Insured Plans** shall continue until termination of this Policy, but only with respect to **Claims** for **Wrongful Acts** occurring prior to the date such organization ceased to be a **Subsidiary**. |

| | | |
|---|---|---|
| *Termination of Sponsored Plan or Insured Plan* | 24. | If an **Insured Organization** terminates a **Sponsored Plan** or an **Insured Plan** before or after the inception date of this Policy, then coverage under this Policy with respect to such terminated **Sponsored Plan** or **Insured Plan** shall continue until termination of this Policy for those who were an **Insured** at the time of such plan termination, or who would have been an **Insured** at the time of such plan termination if this Policy had been in effect, with respect to **Wrongful Acts** occurring prior to or after the date of such plan termination. |

| | | |
|---|---|---|
| *Creation of Sponsored Plan or Insured Plan* | 25. | If an **Insured Organization** creates a **Sponsored Plan** or an **Insured Plan** during the **Policy Period**, then coverage shall be afforded under this Policy, subject to its terms and conditions for such **Sponsored Plan** or **Insured Plan** but only with respect to **Wrongful Acts** occurring after the date of creation of such **Sponsored Plan** or **Insured Plan**. |



CHUBB

| | | |
|---|---|---|
| **Representations and Severability** | 26. | In granting coverage to any **Insured**, the Company has relied upon the declarations and statements in the written application for this Policy and for any policy for which this Policy is a renewal or replacement, including the written applications submitted to any other insurer which are specified in Section F., Prior Insurance, of the Application for this Policy. Such declarations and statements are the basis of such coverage and shall be considered as incorporated in and constituting a part of this Policy. |

Such written application for coverage shall be construed as a separate application for coverage by each **Insured Person**. With respect to the declarations and statements in the written application for coverage, in order to determine if coverage is available:

a. all facts pertaining to and knowledge possessed by any past, present or future chief financial officer, in-house general counsel, chief executive officer, President or Chairman of any **Insured Organization** shall be imputed to the **Insured Organization**; and

b. no declaration or statement in the application or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person**.

| | | |
|---|---|---|
| *Reporting and Notice* | 27. | Any **Insured** shall, as a condition precedent to exercising their rights under this Policy, give the Company written notice as soon as practicable of any **Claim**. |

If, during the **Policy Period**, an **Insured** becomes aware of circumstances which could give rise to a **Claim**, and gives written notice of such circumstances to the Company, then any **Claim**, subsequently arising from such circumstances, shall be considered to have been made during the **Policy Period** in which the circumstances were first reported to the Company.

All **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the Company such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim** or circumstances.

Notice to the Company under this Policy shall be given in writing addressed to:

a. for notice of **Claim** or circumstances which could give rise to **Claim**:

Claims Department, Attention D&O Claim Manager
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

b. for all other notices:

Department of Financial Institutions
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

Such notice shall be effective on the date of receipt by the Company at such address.

| | | |
|---|---|---|
| *Territory* | 28. | Coverage shall extend anywhere in the world |

| | | |
|---|---|---|
| *Valuation and Foreign Currency* | 29. | All premiums, limits, deductibles, **Loss** and other amounts under this Policy are expressed and payable in the currency of the United States of America. If judgment is rendered, settlement is denominated or any element of **Loss** under this Policy is stated in a currency other than United States dollars, payment under this Policy shall be made in United States dollars at the rate of exchange published in The Wall Street Journal on the date the final judgment is entered, the amount of the settlement is agreed upon or any part of **Loss** is due. |

| | | |
|---|---|---|
| *Subrogation and Waiver of Recourse* | 30 | In the event of any payment under this Policy, the Company shall be subrogated, to the extent of such payment, to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the Company effectively to bring suit in the name of such **Insured** |
| | | The Company shall have no right of recourse against any **Insured** with respect to any **Fiduciary Claim**, if this Policy was purchased by an **Insured** other than a **Sponsored Plan** or an **Insured Plan**. |

| | | |
|---|---|---|
| *Action Against the Company* | 31. | No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against any **Insured** to determine such **Insured's** liability, nor shall the Company be impleaded by such **Insured** or the **Insured's** legal representatives |

| | | |
|---|---|---|
| *Bankruptcy or Insolvency* | 32. | Bankruptcy or insolvency of an **Insured** or of the estate of such **Insured** shall not relieve the Company of its obligations nor deprive the Company of its rights under this Policy. |

| | | |
|---|---|---|
| *Authorization Clause* | 33. | By acceptance of this Policy, the **Parent Organization** agrees to act on behalf of all **Insureds** with respect to the giving and receiving of notice of **Claim** or termination, the payment of premiums and the receiving of any return premiums that may become due under this Policy, the negotiation, agreement to and acceptance of endorsements, and the giving or receiving of any notice provided for in this Policy, and each **Insured** agrees that the **Parent Organization** shall act on their behalf. |

| | | |
|---|---|---|
| *Alteration and Assignment* | 34. | No change in, modification of, or assignment of interest under this Policy shall be effective except when made by a written endorsement to this Policy which is signed by a duly authorized representative of the Company. |



**CHUBB**

| | | |
|---|---|---|
| *Termination of Policy* | 35. | This Policy shall terminate at the earliest of the following times: |

a    upon the receipt by the Company of written notice of termination from the **Parent Organization**;

b.    upon expiration of the **Policy Period** as set forth in the Declarations of this Policy;

c.    ten (10) days after receipt by the **Parent Organization** of a written notice of termination from the Company based upon non-payment of premium;

d.    sixty (60) days after receipt by the **Parent Organization** of a written notice of non-renewal from the Company; or

e.    at such other time as may be agreed upon by the Company and the **Parent Organization**.

The Company shall refund the unearned premium computed at customary short rates if the Policy is terminated by the **Parent Organization**. Under any other circumstances the refund shall be computed pro rata.

| | | |
|---|---|---|
| *Definitions* | 36. | When used in this Policy: |

**Administration** means giving advice to employees, handling of records, or effecting enrollment, termination or cancellation of employees under a **Sponsored Plan** or **Insured Plan**.

**Benefits** means perquisites, fringe benefits, payments in connection with an **Employee Benefit Plan** and any other payment, other than salary or wages, to or for the benefit of an employee arising out of the employment relationship.

**Claim** means any **Employment Claim**, **Fiduciary Claim**, **D&O Claim**, or **Investment Advisers Errors or Omissions Claim**. A **Claim** shall be deemed to have been made against the **Insureds** on the date any **Insured** first received written demand for monetary damages, the date that the judicial or administrative proceeding is served upon any **Insured** in any state, provincial or federal court or administrative agency, or the date any **Insured** first received written notice regarding the filing of a notice of charges, formal investigative order or similar document from a state, provincial or federal regulatory agency.

**Defense Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending or investigating any **Claim** and the premium for appeal, attachment or similar bonds.

**D&O Claim** means:

a.    a written demand for monetary damages;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    a criminal proceeding commenced by a return of an indictment; or

d.    a formal administrative, arbitration or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

against any **Insured Person** for a **Wrongful Act** or **Interrelated Wrongful Act** by such **Insured Person** solely in his or her **Insured Capacity** or by such **Insured Person** serving in any **Outside Directorship**, including any appeal therefrom.

*Definitions*
*(continued)*

**Employee Benefit Plan** means a plan so defined in the Employee Retirement Income Security Act of 1974, as amended.

**Employment Claim** means:

a.  a written demand for monetary damages;

b.  a civil proceeding commenced by the service of a complaint or similar pleading;

c.  an arbitration proceeding; or

d.  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document,

which is brought and maintained by or on behalf of any past, present or prospective employee of any **Insured Organization**, against any **Insured** for a **Wrongful Act** or **Interrelated Wrongful Act** by such **Insured Organization** or by such **Insured Person** solely in his or her **Insured Capacity**, including any appeal therefrom, in connection with any actual or alleged wrongful dismissal, discharge or termination of employment, breach of any oral or written employment contract or quasi-employment contract, employment-related misrepresentation, violation of employment discrimination laws (including workplace and sexual harassment), wrongful failure to employ or promote, wrongful discipline, wrongful deprivation of a career opportunity, failure to grant tenure, negligent evaluation, invasion of privacy, employment-related defamation or employment-related wrongful infliction of emotional distress.

**Fiduciary Claim** means:

a.  a written demand for monetary damages;

b.  a civil proceeding commenced by the service of a complaint or similar pleading;

c.  a criminal proceeding commenced by a return of an indictment;

d.  a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or

e.  a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation,

against an **Insured** for a **Wrongful Act** or **Interrelated Wrongful Act** in connection with any:

i.  any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the **Sponsored Plan** by the Employee Retirement Income Security Act of 1974, as amended, or by the common or statutory law of the United States, or any state or other jurisdiction anywhere in the world;

ii.  any other matter claimed against any **Insured Organization** or any **Insured Person** solely because of such **Insured Organization's** or such **Insured Person's** service as a fiduciary of any **Sponsored Plan**; or

iii.  any negligent act, error or omission in the Administration of any **Sponsored Plan** or **Insured Plan**,

including any appeal therefrom.


**CHUBB**

**Definitions**
(continued)

**Financial Impairment** means the status of the **Insured Organization** resulting from:

i.    the appointment by any state, provincial, or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate the **Insured Organization**; or

ii.   the **Insured Organization** becoming a debtor in possession.

**Insured** means any **Insured Organization** or any **Insured Person**.

**Insured Capacity** means the position held by an **Insured Person** in any **Insured Organization** but shall not include any position in any organization other than such **Insured Organization**, even if such **Insured Organization** directed or requested such **Insured Person** to serve in such other position.

**Insured Organization** means the **Parent Organization** or any **Subsidiary**, and solely for purposes of any **Fiduciary Claim**, any **Sponsored Plan** or **Insured Plan**.

**Insured Person** means all past, present or future duly elected directors, duly elected or appointed officers, partners, trustees or members of the **Insured Organization** and as respects any **Employment Claim** or **Investment Advisers Errors or Omissions Claim**, employees of the **Insured Organization**.

**Insured Plan** means any government mandated insurance for workers compensation, unemployment, social security or disability benefits for employees of the **Insured Organization**.

**Interrelated Wrongful Acts** means all causally connected **Wrongful Acts**.

**Investment Advisers Errors or Omissions Claim** means:

a.    a written demand for monetary damages;

b.    a civil proceeding commenced by the service of a complaint or similar pleading;

c.    a criminal proceeding commenced by a return of an indictment;

d.    any investigation into possible violations of law or regulation initiated by any governmental body or self regulatory organization (SRO), or any proceeding commenced by the filing of a notice of charges, or formal investigative order or similar document and shall include any appeal from such proceeding; or

e.    an arbitration proceeding against an **Insured** for a **Wrongful Act,** against an **Insured** for a **Wrongful Act** committed or attempted by such **Insured** solely while performing **Investment Adviser Services,**

including any appeal therefrom.

**Investment Adviser Services** means only those services performed or required to be performed by an **Insured** solely in its capacity as an investment adviser as defined in Section 202(11) of the Investment Advisers Act of 1940 for or on behalf of a customer of an **Insured**, pursuant to an agreement between such customer and such **Insured** for a fee, commission or other monetary consideration or other remuneration which inures to the benefit of such **Insured**. **Investment Adviser Services** shall not include the practice of law or the rendering of legal services.

**Definitions**
*(continued)*

**Loss** means the amount which an **Insured** becomes legally obligated to pay, including, but not limited to, damages, judgments, settlements, costs and **Defense Costs. Loss** does not include:

a. any amount not indemnified by any **Insured Organization** for which any **Insured Person** is absolved from payment by reason of any covenant, agreement or court order;

b. the future salary or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution;

c. fines or penalties imposed by law, including, but not limited to, the multiple portion of any multiplied damage award;

d. matters uninsurable under the law pursuant to which this Policy is construed; or

e. amounts otherwise reimbursable to any **Insured** by any trust, estate, plan or fund or any similar entity, or the sponsor of any such trust, estate, plan or fund.

**Outside Directorship** means the position of director, officer, trustee, governor or any equivalent executive position in an **Outside Entity** held by an officer of the **Insured Organization**, if service in such position was with the knowledge and consent or at the request of the **Insured Organization**.

**Outside Entity** means any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization** and that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended.

**Parent Organization** means the entity that is named in the Declarations, as legally constituted at the inception date of this Policy.

**Policy Period** means the period specified in the Declarations, subject to termination in accordance with Section 35 of this Policy. If this period is less than or greater than one year, then the Limits of Liability specified in the Declarations shall be the Company's maximum Limit of Liability for the entire period.

**Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

**Sponsored Plan** means:

a. an **Employee Benefit Plan** which is operated solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization for the benefit of the employees of the **Insured Organization** located anywhere in the world and which existed at the inception date of this Policy or any policy of which this Policy is a renewal or which is created or which is acquired after the inception of this Policy, subject to the provisions outlined in this Policy;

b. any other plan, fund, or program specifically included as an **Insured Organization**. However, **Insured Organization** shall not include any multi-employer plan as defined in the Employee Retirement Income Security Act of 1974, as amended; or



**CHUBB**

**Definitions**
*(continued)*

c. any other employee benefit plan or program not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, sponsored solely by the **Insured Organization** for the benefit of the employees of the **Insured Organization**.

**Subsidiary** means any organization, at or prior to inception of this Policy, in which more than 50% of the outstanding securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by one or more **Insured Organizations**.

**Welfare Benefit Plan** means any plan so defined in the Employee Retirement Income Security Act of 1974, as amended

**Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted, before or during the **Policy Period** by any **Insured**.

For the purposes of these definitions, the singular includes the plural and the plural includes the singular, unless otherwise indicated.



**CHUBB**

Effective date of
this endorsement:  January 28, 2004

**Federal Insurance Company**

Endorsement No :  1

To be attached to and form a part of Policy
Number:                7043-0085

Issued to:  RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT

### BREACH OF WRITTTEN EMPLOYMENT CONTRACT EXCLUSION ENDORSEMENT

It is agreed that Section 7., Exclusions Applicable to any Employment Claim, is amended by adding the
following:

e .      which constitutes an actual or alleged breach of any written employment contract.  This exclusion
shall not apply to the extent the **Insured** would have been liable for such **Loss** in the absence of
such written employment contract.


ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.


Date:  April 16, 2004                                    By_____
                                                              Authorized Representative

ForeFront – Investment Advisers
Form 17-02-1796 (Rev. 10-01)                                            Page 1



**CHUBB**

Effective date of
this endorsement:   January 28, 2004

**Federal Insurance Company**

Endorsement No.:   2

To be attached to and form a part of Policy
Number:             7043-0085

Issued to:   RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT

### SECURITIES OFFERING EXCLUSION BLANKET ENDORSEMENT

It is agreed that Section 10., Exclusions Applicable to any D&O Claim, is amended by adding the
following:

i.        based upon, arising from, or in consequence of a public or private offering, sale, distribution or
         issuance of securities, whether or not a prospectus has been issued.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  April 16, 2004                                    By_____

                                                         *Robert Hamburger*

                                                                 Authorized Representative


**CHUBB**

Effective date of
this endorsement:  January 28, 2004

**Federal Insurance Company**

Endorsement No :  3

To be attached to and form a part of Policy
Number:                 7043-0085

Issued to:  RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT

### PROFESSIONAL SERVICES EXCLUSION ENDORSEMENT

It is agreed that Section 10., Exclusions Applicable to any D&O Claims, is amended by adding the
following:

h .        based upon, arising from or in consequence of the performing, or failure to perform, **Investment
           Adviser Services**.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  April 16, 2004

By _____
                    Authorized Representative



**CHUBB**

Effective date of
this endorsement:   January 28, 2004

**Federal Insurance Company**

Endorsement No.:   4

To be attached to and form a part of Policy
Number:              7043-0085

Issued to:   RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT

## AMENDED DEFINITION OF CLAIM ENDORSEMENT

It is agreed that Section 36., Definitions, is amended by deleting the definition of **Investment Advisers Errors or Omissions Claim** in its entirety and replacing it with the following:

**Investment Advisers Errors or Omissions Claim** means:

a.   a written demand for monetary damages,

b.   a civil proceeding commenced by the service of a complaint or similar pleading,

c.   a criminal proceeding commenced by a return of an indictment;

d.   any investigation into possible violations of law or regulation initiated by any governmental body or self regulatory organization (SRO), or any proceeding commenced by the filing of a notice of charges, or formal investigative order or similar document and shall include any appeal from such proceeding; or

e.   an arbitration proceeding,

brought by or on behalf of a customer of the **Insured** against an **Insured** for a **Wrongful Act** or **Interrelated Wrongful Act,** by such **Insured** solely while performing **Investment Adviser Services,** including any appeal therefrom.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: April 16, 2004

By _____
              Authorized Representative


**CHUBB**

Effective date of
this endorsement:   January 28, 2004

**Federal Insurance Company**

Endorsement No.:   5

To be attached to and form a part of Policy
Number:                7043-0085

Issued to:   RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT

### AMEND BENEFITS DUE EXCLUSION ENDORSEMENT

It is agreed that Section 9., Exclusions Applicable to any Fiduciary Claim, of this Policy is amended by
deleting Exclusion d. in its entirety and replacing it with the following:

d.      which constitutes benefits due or to become due under the terms of a **Sponsored Plan** or **Insured
        Plan,** or benefits which would be due if such **Sponsored Plan** or **Insured Plan** complied with all
        applicable law, including but not limited to **Loss** resulting from the payment of plaintiff attorneys'
        fees based upon a percentage of such benefits or payable from a common fund established to pay
        such benefits, unless, and to the extent that, (a) the **Insured** is a natural person and the benefits are
        payable by such **Insured** as a personal obligation, and (b) recovery for the benefits is based upon a
        covered **Wrongful Act**

In the event that this endorsement conflicts with any other endorsement to this Policy, this endorsement
shall govern.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date: April 16, 2004

By _____
                        Authorized Representative


**CHUBB**

# Notice of Loss Control Services

As a Chubb policyholder, we'd like to let you know that we have valuable loss prevention information available to you. Below is a description of these services.

## Employment Practices Liability (EPL) Loss Prevention Services

- **Chubb EPL Loss Prevention Web Site**

  For information about the program, as well as a way to access many of our available services, go to http://csi.chubb.com/epllossprevention.

- **AgosNet for Chubb**

  AgosNet for Chubb is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access or to schedule future access to AgosNet for Chubb, simply call **1.800.205.5262**. Identify yourself as a Chubb insured and have your policy number available.

- ***Employment Practices Loss Prevention Guidelines* Manual**

  Written by Seyfarth Shaw exclusively for Chubb, this manual provides an overview of key employment issues and offers proactive ideas for avoiding employment lawsuits. To order the *Employment Practices Loss Prevention Guidelines,* simply call **1.866.282.9001,** order 14-01-0061, and provide your mailing address

- ***CheckPoint* Newsletter**

  *CheckPoint*, Chubb's periodic newsletter on employment issues will be mailed directly to you as it is published.

  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues. In addition to preferred rates for customers, Chubb will reimburse customers for 50% of the cost of the qualified services, up to 10% of the customer's EPL insurance premium. To access the network of consultants and learn more about the consultant services program, go to Chubb's EPL Loss Prevention Web site at http://csi.chubb.com/epllossprevention/lossprev.asp.

- **Toll-free Hot Line**

  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis Schnitzler & Krupman. We offer customers an unlimited number of calls to the hot line at no additional charge.

If you have any questions on the EPL Loss Prevention program, simply consult http://csi.chubb.com/epllossprevention or email csi-info@chubb.com.

---

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

Form 17-02-2925 (Ed. 9-01)



**Chubb & Son**, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER
## DISCLOSURE NOTICE OF
## TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ -0-.

If you have any questions about this notice, please contact your agent or broker.

10-02-1281 (Ed. 1/2003)



**CHUBB**

PREMIUM BILL

Insured:   RIGHTIME ECONOMETRICS, INC. RTE ASSET MANAGEMENT     Date:   04/16/2004

Producer:   PAUL HERTEL & CO., INC.
            325 CHESTNUT ST STE 1200
            PHILADELPHIA, PA 191062813

Company:   Federal Insurance Company

THIS BILLING IS TO BE ATTACHED TO AND FORM A PART OF THE POLICY REFERENCED BELOW.

NOTE: PLEASE RETURN THIS BILL WITH REMITTANCE AND NOTE HEREON ANY CHANGES. BILL WILL BE
RECEIPTED AND RETURNED TO YOU PROMPTLY UPON REQUEST.

PLEASE REMIT TO PRODUCER INDICATED ABOVE. PLEASE REFER TO 7043-0085

| EFFECTIVE DATE | POLICY OR CERTIFICATE NUMBER | COVERAGE | | PREMIUM |
|---|---|---|---|---|
| January 28, 2004 | 7043-0085 | FIFFTINV | | $21,000.00 |
| to | | | | |
| January 28, 2005 | | | | |
| | | | | |
| | | | TOTAL | $21,000.00 |
| | | | | |

Form 26-10-0426 (Ed. 2/98)